**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MARILYN FORD-EVANS, | } | |
| *Plaintiff* | } | |
| v. | } | CIVIL ACTION NO. H-04-3344 |
| | } | |
| DANIEL SMITH & UNITED SPACE | } | |
| ALLIANCE LLC, | } | |
| *Defendants.* | } | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendants Daniel Smith ("Smith") and United Space Alliance LLC's ("USA") motions for summary judgment (Docs. 30 & 31). Plaintiff Marilyn Ford-Evans ("Ford-Evans") has not responded, and the time to respond has past.[1]  For the following reasons the Court **ORDERS** that Defendants' motions are **GRANTED**.

**I. RELEVANT FACTS**

USA is the prime contractor to NASA.  It provides, among other things, astronaut training, flight operations, flight software development, space shuttle flight simulator operations, and astronaut flight crew equipment processing.  Ford-Evans worked for USA in its Cushion Lab from July 1998 until her termination in August 2003.  During that time Smith supervised the Cushion Lab as well as the Food Lab, Camera Lab, Pre-Pack Lab, Clothing Lab, and Crew Equipment Lab.

The "Cushion Lab" is a workroom in USA's astronaut flight crew equipment processing complex.  Cushion Lab technicians, such as Ford-Evans, make the mission-specific foam inserts (called "cushions" in the trade) used to protect tools, hardware, experiments, and other fragile objects from being destroyed by the vibrations associated with launch, re-entry, and landing during space flight.

The process of making the cushions begins with a Test Preparation Sheet ("TPS") that describes the precise specifications for the particular cushion and also includes a blueprint of the

---

[1] According to Local Rules 7.3 and 7.4, a party must file its opposition to a motion within twenty days from filing.  If the party fails to do so, the Court assumes that the motion is unopposed.

exact size, shape, configuration, etc., of the cushion to be prepared. The technician uses various tools to make a cushion to the exact specifications of the TPS. The different foam pieces used are assembled using two-sided tape. Routinely, selective joints of cushions require reinforcement and/or particular compartments within an overall cushion require a smoother surface. This is accomplished using Nomex (a synthetic cloth-like material) sometimes coated with Gental 104 or a mixture of Kel-F800 and Methyl Ethyl Ketone ("MEK"), both commonly known as fraycheck.

During the period Ford-Evans was employed by USA, Gental 104, Kel-F, MEK, 3M Spray-Mount, Heptane, and Toluene[2] were employed in the processing of cushions. Specific protocols were established and followed governing the use and storage of these chemicals. Each chemical involved was stored in a closed storage cabinet and, when in use, mixed and applied using rubber gloves and safety glasses under a laminar hood called a flow bench. This flow bench protected the technician by exhausting any chemical vapor out of the air before the technician using the chemical could be exposed. In 2003 these protocols were tested in the Cushion Lab. The test used MEK (the most commonly used chemical) as a representative substance. It revealed that exposure to air-born MEK was less than 0.74 parts-per-million of air, well below OSHA's permissible exposure limit. Additionally, the flow bench was tested yearly and has always been in compliance with the standards promulgated by the American National Standards Institute.

In 2003, Ford-Evans began to complain that the chemicals used in the Cushion Lab were causing or aggravating a voice/throat condition she had. Interestingly, her claim is contradicted by her own doctor, who testified at his deposition that there was no factual basis in the record to conclude that exposure to chemicals either caused or aggravated Ford-Evans's existing condition.

In June, Ford-Evans met with Smith and USA Safety Representatives to discuss her concerns about her use of chemicals in the Cushion Lab. After the meeting, Smith explained to

---

[2] It appears that the use of Toulene was discontinued IN 2000 and Heptane was employed in its stead.

Ford-Evans that he could accommodate her if she needed to be transferred, but that he needed some substantiation from her doctor confirming a medical need to do so.

On 1 July 2003, Ford-Evans began a paid medical short-term leave of absence.  A month later, her treating physician certified that Ford-Evans could return to work on the condition that she be on voice rest.  Despite her physician's release, Ford-Evans refused to return to work.  USA informed Ford-Evans that to avoid termination she had three days in which to either, (1) return to work; (2) provide a request to return to work with a reasonable accommodation; or (3) provide satisfactory evidence to the USA Health Services Office that she was still unable to return to work.

Three days after receiving the letter, Ford-Evans visited the USA Health Services Office and met with the Laneil Vawter ("Vawter"),  Director of USA Health Services.  She told Vawter that her physician had told her that she was unable to use her voice or work around chemicals.  Vawter explained that these claims needed to be substantiated by Ford-Evans's treating physician, and offered to help her obtain the needed information from Dr. Stasney.  Vawter then secured a medical release form from Ford-Evans and faxed it to Dr. Stasney's office.  Vawter followed up the fax with a phone call during which he explained the urgent nature of the request.  Nevertheless, no information was received by USA Health Services within the required time frame.

Effective 28 August 2003, Ford-Evans was terminated for failing to comply with USA's letter. Subsequently, USA was given a letter from Dr. Stasney, dated 28 August 2003, in which he recommended that Ford-Evans have "complete voice rest for two weeks," "limited voice use after that . . ." and "no exposure to chemicals."  A second letter from Dr. Stasney was received on 5 September 2003 providing that Ford-Evans was medically cleared to return to work with "complete voice rest for two weeks, limited voice use with supervision of a Speech Pathologist" and that she be "not further exposed to chemicals."

Ford-Evans complained about her termination, and her complaint was treated as an appeal. In accordance with company policy, a Management Review Board was convened to consider the events surrounding her termination and determine whether it should be rescinded.  Following the

committee's review of all the facts and circumstances surrounding Ford-Evans's termination, the termination was allowed to stand because it complied with USA's policy and the circumstances did not justify deviation from the policy.

Ford-Evans filed the instant suit against USA and Smith on 7 February 2005. She seeks recovery on the following theories: discriminatory violation of the Americans with Disabilities Act; termination based on discrimination; discriminatory violation of the Family Medical Leave Act; retaliation; and, slander.

## II. LAW

### A. Summary Judgment

The movant seeking a federal summary judgment initially must inform the court of the basis for his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that he is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims. International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., 812 F.2d 219, 222 (5th Cir. 1987). The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R. Civ. P. 56(c). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence and specific facts. Anderson, 477 U.S. at 256-57. He meets this burden only if he shows that "a reasonable jury could return a verdict for the non-moving

party." Id. at 254.  A mere scintilla of evidence will not preclude granting of a motion for summary judgment. Id. at 252.

All reasonable inferences must be drawn in favor of the non-moving party. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574. 587-88 (1986), citing United States v. Diebold, 369 U.S. 654, 655 (1962).  Once the burden of proof has shifted to the non-movant, he "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586.  Instead he must produce evidence upon which a jury could reasonably base a verdict in his favor. Anderson, 477 U.S. at 249.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id., 477 U.S. at 249-50.  Moreover the non-movant must "go beyond the pleadings and by her own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A., 139 F.3d 532, 536 (5th Cir. 1998).  Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence. Grimes v. Texas Dept. of Mental Health and Mental Retardation, 102 F.3d 137, 139-40 (5th Cir. 1996); Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir.), cert. denied, 513 U.S. 871 (1994); Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 506 U.S. 825 (1992).  Nor are pleadings summary judgment evidence. Wallace v. Texas Tech University, 80 F.3d 1042, 1046 (5th Cir. 1996), citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992); Lujan v. National Wildlife Fed'n, 497 U.S. 871, 889 (1990).  Nor is the district court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998), citing Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir.), cert. denied, 506 U.S. 832 (1992).

## III. APPLICATION OF LAW TO THE FACTS

Plaintiff has filed no response to Defendants' motion, and she has introduced no evidence substantiating her claims; therefore, the law dictates that summary judgment be granted in Defendants' favor. Nevertheless, the Court has examined the evidence annexed to Defendants' pleading for any sign of wrongdoing. It has found none. The court is aware that Plaintiff may feel badly treated by her employer. However, Texas follows a policy of employment at will, which allows an employer to terminate an at-will employee for good reason, bad reason, or no reason at all. It appears USA terminated Ford-Evans for her failure to substantiate her medical condition within the allotted time. USA is entitled to demand and compel strict adherence to its policies so long as it violates no law. Plaintiff has not shown that it did. Therefore, the Court **ORDERS** that Defendants' motions for summary judgment are **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**SIGNED** at Houston, Texas, this 13th day of January, 2006.


MELINDA HARMON
UNITED STATES DISTRICT JUDGE