IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARILYN FORD-EVANS,<br>         Plaintiff(s) | }<br>}<br>} |
| v. | }   CIVIL ACTION NO. H-04-3344<br>} |
| DANIEL SMITH & UNITED SPACE<br>ALLIANCE LLC,<br>         Defendant(s) | }<br>}<br>}<br>}<br>} |

## MEMORANDUM OPINION AND ORDER

Title 29 United States Code Section 2612(a)(1)(D) provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following: . . .(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee. Plaintiff, Marilyn Ford-Evans ("Ford-Evans") claims her employer, Defendant United Space Alliance LLC ("USA"), violated this provision by firing her after approximately eight weeks of leave. Because material questions of fact predominate, the court ORDERS that U.S.A.'s motion for summary judgment (Doc. 54) is DENIED.

I.  Facts

USA is a prime contractor for N.A.S.A. (Sellers' Decl. ¶ 2; Doc. 32 Ex. B.) Among other things, it produces custom foam cushion inserts to protect tools and other objects in the space shuttle during launch, re-entry, and landing. (Smith Decl. ¶ 3; Doc. 32 Ex. C.) The preparation of cushions is an involved process requiring the use of various tools. (*Id.* ¶ 4.) When a foam joint needs reinforcing or a compartment needs a smooth surface, technicians apply Nomex (a synthetic cloth-like material) sometimes coated with Gental 104 or a mixture of Kel-F800 and methyl ethyl ketone ("MEK"), both commonly known as fraycheck. (*Id.*) In addition to these substances, technicians use heptane and 3M Spray-Mount. (Siemens Decl. ¶ 3, Doc. 32 Ex. D.) These are all OSHA regulated chemicals of varying toxicity. (Siemens Decl. ¶ 4.)

Rebecca Siemens ("Siemens") is an Industrial Hygienist employed by USA. (Siemens Decl. ¶ 1.) Her job entails observing work areas at USA facilities for potential chemical exposure, conducting "exposure assessments," i.e., measuring the amount of exposure to a particular chemical an employee may have, and working to reduce exposure where appropriate. (*Id.* ¶ 2.) She inspected the cushion lab six times during the relevant time period. (*Id.* ¶ 3.) Her observations were (1) that employees at the cushion lab used chemicals in accordance with procedures (*Id.* ¶ 6) and (2) that employees' exposure to chemicals in the lab was minimal, e.g. about the equivalent of exposure to correction fluid such as Wite-Out or Liquid Paper (*Id.* ¶ 7.) She concluded, based on these observations, that "a Cushion Lab technician has an insignificant risk to his or her health from exposure to chemicals in the Cushion Lab and any exposure they may have is minimal (the least possible amount of exposure) and well below the limits allowed by OSHA." (*Id.* ¶ 10.)

Ford-Evans worked as a technician in the cushion lab. In June 2003, she informed her supervisor, Defendant Daniel Smith ("Smith"), that she needed to go on medical leave because of "severe voice and throat problems." (Ford-Evans Decl. ¶ 1; Doc. 59 Ex. A.) On July 1, 2003, she began paid medical/short-term disability leave. (Sellers Decl. ¶ 5.) CIGNA, which administers USA's benefit plan, assigned Angela Wallace ("Wallace") to coordinate Ford-Evans's benefits. (Wallace Decl. ¶ 2; Doc. 32 Ex. G.)

As part of her monitoring of Ford-Evans condition, Wallace contacted Dr. Horatio Guzman, one of Ford-Evans's treating physicians, and inquired as to Ford-Evans's condition and her availability to return to work. (Wallace Decl. ¶ 4.) Dr. Guzman informed Wallace that Ford-Evans could return to work provided she remain on voice rest. (Wallace Decl. ¶ 5.) Dr. Guzman also completed a Disability Management Solutions Medical Request Form stating that Ford-Evans had been diagnosed with "chronic hyperplastic laryngitis" and referred to Dr. Richard Stasney, a specialist, for treatment. (Disability Management Solutions Medical Request Form; Wallace Decl. Ex. 1.)

On August 20, 2003, Wallace informed USA that Ford-Evans could return to work with restrictions on her voice use . (*Id.* ¶ 8.) CIGNA subsequently determined that Ford-Evans's claim for benefits expired on August 19, 2003. (*Id.* ¶ 9.)

On August 21, 2003, Peter Sellers ("Sellers"), USA's human resources representative, sent Ford-Evans a letter advising her that her leave of absence had expired on the August 19th and that she had three business days in which to either (1) "report for return-to-work processing at the USA Health Services Office; (2) provide a request to return to work with reasonable accommodation; or (3) provide satisfactory evidence to the USA Health Services Office that she was still unable to return to work." (Sellers Decl. ¶ 6; H.R. Letter, Ford-Evans Depo. Def.'s Ex. 19.)  USA also informed Ford-Evans that failure to comply would result in termination. (*Id.*)

Ford-Evans was examined by Dr. Stasney on Friday August 22, 2003. (Ford-Evans Decl. ¶ 4.) As part of his examination, Dr. Stasney took a detailed history of Ford-Evans's condition and her workplace environment. (*Id.*)  Ford-Evans advised Dr. Stasney that she was exposed to chemicals at her job and that she could smell the chemicals throughout the lab when they were used. (*Id.*)  Dr. Stasney then told Ford-Evans he did not want her working around chemicals for a while.  (*Id.*; Ford-Evans Depo. 150:23-151:1)

Ford-Evans received USA's letter the day of her appointment with Dr. Stasney,. (Ford-Evans Decl. ¶ 5.)  Her recollection is that the letter gave her three options: (1) re-certification of her need for continued medical leave; (2) medical certification of necessary accommodations; or (3) reporting for work with a physician's release to return to work.  (*Id.* ¶ 5.)

The Monday after receiving USA's letter, Ford-Evans met with USA's director of Health Services, Laniel Vawter ("Vawter").  (*Id*. ¶ 6.)   Ford-Evans testified that she told Vawter Dr. Stasney had told her not to work in the lab and that she did not want to return to work. (*Id.* ¶ 6.) She added, however, that if she needed to return to work to save her job, she would. (*Id.*) According to Ford-Evans, Vawter told her that she could not return to work without a release from her doctor. (*Id.*)  After unsuccessfully trying to contact Dr. Stasney, Vawter told Ford-Evans to go

home and added that if she had any questions or received Dr. Stasney's report she would contact Ford-Evans.  (*Id.* ¶ 9.)  Ford-Evans inquired about the three day deadline in USA's letter, and Vawter told her not to worry about it.  (*Id.* ¶ 9.)

On August 28, 2003, three days after her meeting with Vawter, Ford Evans was terminated by USA for failing to comply with the terms of its letter. (Sellers Decl. ¶ 8; Termination Letter Ford-Evans Depo. Def.'s Ex. 5.) Sellers states that Ford-Evans received USA's letter on the August 29th. (*Id.*)

The same day USA chose to terminate Ford-Evans, Dr. Stasney faxed Vawter and Wallace a letter informing "whom it may concern" that Ford-Evans is a patient, that she has been diagnosed with an incompetent glottis with muscle tension disorder and early dystonia, and that Dr. Stasney recommends complete voice rest for two weeks followed by limited voice use, close supervision by a speech therapist, and no exposure to chemicals.(Stasney Depo. Def.s Ex. 1; Doc. 32 Ex. E.) The letter concludes by informing the reader that Ford-Evans is scheduled for a follow up visit on October 10, 2003.  Dr. Stasney also wrote two letters to Sellers at Human Resources.  The letters, which are identical except for having been written two days apart, authorize Ford-Evans to return to work provided she is, *inter alia*, "not further exposed to chemicals." (Stasney Depo. Ex. 2 Excerpts; Doc. 60, Ex. A.)

II. Summary Judgment Standard

The movant seeking a federal summary judgment initially must inform the court of the basis for his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that he is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims. *International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co.*, 812 F.2d 219,

222 (5th Cir. 1987). The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R. Civ. P. 56(c). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence and specific facts. *Anderson*, 477 U.S. at 256-57. He meets this burden only if he shows that "a reasonable jury could return a verdict for the non-moving party." *Id.* at 254. A mere scintilla of evidence will not preclude granting of a motion for summary judgment. *Id.* at 252.

All reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574. 587-88 (1986), citing *United States v. Diebold*, 369 U.S. 654, 655 (1962). Once the burden of proof has shifted to the non-movant, he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. Instead he must produce evidence upon which a jury could reasonably base a verdict in his favor. *Anderson*, 477 U.S. at 249. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*, 477 U.S. at 249-50. Moreover the non-movant must "go beyond the pleadings and by her own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence. *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). Nor are

pleadings summary judgment evidence. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1046 (5th Cir. 1996), *citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the district court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998), *citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).

### III.  The Family and Medical Leave Act

The FMLA entitles qualifying employees to twelve weeks of unpaid leave during any twelve month period because of (1) the birth or adoption of a child; (2) the need to care of a family member suffering from a serious health condition; or (3) a serious health condition that makes the employee unable to perform the functions of his job. 29 U.S.C.S. § 2612 (2007). Upon returning from leave, the employee is entitled to be restored to the position she held before the leave was taken or an equivalent position. 29 U.S.C.S. § 2614 (2007). An employer can require an employee taking FMLA leave to produce, within a reasonable time, a certification from a healthcare provider substantiating the need for leave. 29 U.S.C.S. § 2613(a) (2007). The FMLA prohibits employers from interfering or discriminating against their employees for exercising their FMLA rights. 29 U.S.C.S. § 2615(a)(1) (2007). And further provides that an employee aggrieved by a violation of Title 29 United States Code Section 2615, may bring a suit seeking consequential damages, liquidated damages, and attorney's fees. 29 U.S.C.S. § 2617 (2007).

To prevail on an interference claim Plaintiff must show "that (1) she is an eligible employee under the FMLA, (2) the defendant is an employer subject to the requirements of the FMLA, (3) she was entitled to FMLA leave, (4) she gave notice to the defendant of her intention to take FMLA leave, and (5) the defendant denied her the benefits to which, under the FMLA, she was

entitled." *Schimek v. MCI, Inc.*, 3:05-cv-0045, 2006 U.S. Dist. LEXIS 54747, *35 (N.D. Tex. Aug. 7, 2006).

When it enacted the FMLA, Congress empowered the Secretary of Labor to issue regulations to effectuate its provisions. 29 U.S.C.S. § 2654. These regulations must be enforced unless "arbitrary, capricious, or manifestly contrary to the statute." *Ragsdale v. Wolverine World Wide*, 535 U.S. 81, 86 (2002). Several regulations are relevant to the resolution of this case. First, 29 C.F.R. § 825.311 provides that an employee must be given at least 15 days to obtain a certification from his healthcare provider if one is required. Second, 29 C.F.R. § 825.301 provides that employers must give their employees written notice of their rights under the FMLA "no less often than the first time in each six-month period that an employee gives notice of the need for FMLA leave." Finally, 29 C.F.R. § 825.301 provides that "If an employer fails to provide notice . . . the employer may not take action against an employee for failure to comply with any provision required to be set forth in the notice." *Id.*

In *Ragsdale* the Supreme Court rejected the remedial mechanism hitherto applied to violations of the notice provision in 29 C.F.R. § 825.301. The Court found that the remedial scheme, which tolled the leave period until the employee was given notice of his rights, was incompatible with the statutory language of the FMLA, which provides that damages are only recoverable if the employer interferes with the employee's exercise of FMLA rights. 535 U.S. at 89 (*quoting* 29 U.S.C. § 2617). Accordingly, a necessary component of any damage action under Section 2617 is evidence that the employer's regulatory violation impaired the employees rights under the FMLA.

IV. Application of Law to the Facts.

Examining the summary judgment evidence, it is clear that disputed issues of material fact prevent the court from granting Defendant's motion. USA makes three arguments: (1) that Ford-Evans was not protected by the FMLA because her physicians had released her to return to work;

(2) that Ford-Evans requested an accommodation rather than an extension of her leave; and (3) that any violation of the regulations that may have occurred was harmless.

Defendant's first claim, that Ford-Evans's is not protected by the FMLA because her physicians released her to return to work, fails because it over simplifies her doctor's orders. Specifically, Dr. Stasney released Ford-Evans to return to work *provided* she not be exposed to chemicals. USA's own expert admits that working in the cushion lab entailed some exposure to chemicals. (Siemens Decl. ¶ 4, 6, 7, 9, 10.) Moreover, Ford-Evans vigorously contests USA's claim that exposure was minimal. (Ford-Evans Decl. ¶ 12.) Finally, even assuming that exposure was minimal, the FMLA proscribes a process for determining whether an employee qualifies for FMLA leave. 29 U.S.C.S. § 2613 (2007). Under this process, USA should have asked for a second opinion. *Id.* USA chose not to follow this path. Accordingly, the Court finds that a jury could well conclude that USA violated Ford-Evans's FMLA rights when it terminated her.

The summary judgement record is unclear on when USA should have known that Ford-Evans qualified for protection under the FMLA. Specifically, neither party has clarified whether USA treated Ford-Evans first eight weeks of leave as FMLA qualifying.[1] The regulations state that the individual notice requirement does not begin until the employer is aware that the employee requires FMLA protected leave. 29 C.F.R. § 825.301. To determine whether USA violated this provision a fact finder will have to determine when USA should have known that Ford-Evans's leave was FMLA qualifying.

Assuming the finder of fact determines that USA knew or should have known that Ford-Evans's leave qualified as FMLA protected, material issues of fact exist as to whether USA complied with the statute and its regulations. Specifically, a jury must determine (1) whether USA denied Ford-Evans approximately one month of FMLA protected leave by firing her; (2) whether USA complied with the regulations by informing Ford-Evans that her leave was FMLA protected;

---

[1] 29 C.F.R. § 825.208 provides that: "In all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee as provided in this section."

and (3) whether USA complied with the regulations by allowing Ford-Evans only three days to produce documentation supporting her claim.

USA's second and third arguments fair no better than its first. Whether Ford-Evans requested an accommodation, i.e., being assigned to a job that did not require her to work with chemicals, is irrelevant to Ford-Evans's FMLA claim. An employee does not forfeit her rights by requesting that an employer assign her to another job. Under some circumstances such an arrangement can be beneficial to both parties by allowing the employer to maintain its existing workforce and the employee to address her medical condition without losing her paycheck. Finally, USA's third argument, that any violation it committed was harmless, is not convincing. Had USA given Ford-Evans the statutory fifteen day period to certify/recertify it would have confirmed her doctor's orders.

V.  Conclusion

For the aforementioned reasons, the court ORDERS that Defendant's motion for summary judgment (Doc. 54) is DENIED.

**SIGNED** at Houston, Texas, on this 19th day of June, 2007.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE